UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. _____

UNITED SPECIALTY INSURANCE COMPANY,

       Plaintiff,

v.

TZADIK ACQUISITIONS, LLC, TZADIK MANAGEMENT GROUP, LLC, TZADIK MANAGEMENT GROUP 2, LLC, TZADIK PROPERTIES, LLC, JAMES RIVER INSURANCE COMPANY, WILLA KIMBLE, as Personal Representative of the Estate of Alfred Lance, III, and COMMERCE AND INDUSTRY INSURANCE COMPANY

       Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, UNITED SPECIALTY INSURANCE COMPANY ("United Specialty" or "Plaintiff"), by and through its undersigned counsel, and pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, hereby files this Complaint seeking a Declaratory Judgment against Defendants, TZADIK ACQUISITIONS, LLC ("Tzadik Acquisitions"), TZADIK MANAGEMENT GROUP, LLC ("Tzadik Management"), TZADIK MANAGEMENT GROUP 2, LLC ("Tzadik Management 2"), TZADIK PROPERTIES, LLC ("Tzadik Properties"), JAMES RIVER INSURANCE COMPANY ("James River"), COMMERCE AND INDUSTRY INSURANCE COMPANY ("CIIC") and WILLA KIMBLE, as Personal

Representative of the Estate of Alfred Lance, III ("Ms. Kimble") (collectively referred to as the "Defendants") and states as follows:

**INTRODUCTION**

1. United Specialty seeks a declaration that: (a) it does not owe a duty to defend or indemnify Tzadik Acquisitions, Tzadik Management, Tzadik Management 2 or Tzadik Properties (collectively the "Tzadik Entities"), in a lawsuit captioned *Willa Kimble v. Tzadik Acquisitions, LLC, et. al.*, Case No. 16-2017-CA-06741, in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida (the "Underlying Action"); and (b) that it does not owe a duty to indemnify any of the Tzadik Entities for any claims that were brought, or could have been brought, in the Underlying Action.

2. As discussed in further detail below, the Underlying Action is a Wrongful Death lawsuit commenced by Ms. Kimble against the Tzadik Entities arising out of an October 14, 2016 incident in which Alfred Lance, III ("Mr. Lance") was shot and killed while on the premises at King Trail Apartments, 3770 Toledo Road, Jacksonville, Florida ("King Trail Apartments"). (*See* the operative Complaint in the Underlying Action, ¶¶ 13-14, attached hereto as **Exhibit "A"**). Ms. Kimble has alleged that the Tzadik Entities, as the owners and/or managers of King Trail Apartments, breached a duty to Mr. Lance by failing to provide adequate security at King Trail Apartments. *Id*. at ¶¶ 16-23.

3. The Underlying Action was commenced on October 31, 2017, and defense counsel for the Tzadik Entities entered a Notice of Appearance on or about December 4, 2017. Notwithstanding, United Specialty did not receive notice of the Underlying Action – or of the October 14, 2016 shooting of Mr. Lance – until approximately July 6, 2018. Thus, United

Specialty did not receive notice until more than twenty-months after the shooting incident occurred, and more than eight-months after the Underlying Action was commenced.

4. United Specialty issued a commercial general liability insurance policy to Tzadik Acquisitions and Tzadik Management 2, bearing policy number DCH00047-00, for the policy period of October 15, 2015 through October 15, 2016 with limits of $1 Million per occurrence and $2 Million in the aggregate (the "United Specialty Policy"). (A complete copy of United Specialty Policy, with all subsequent endorsements, is attached as **Exhibit "B"**).

5. Prior to the issuance of the United Specialty Policy, Tzadik Acquisitions and Tzadik Management 2 submitted an Acord Commercial Insurance Application to United Specialty (the "Application"), in which they were required to identify each and every premises they owned, rented or operated under the "PREMISES INFORMATION" and "ADDITIONAL PREMISES INFORMATION SCHEDULE" sections of the Application. (*See* Application, attached hereto as **Exhibit "C"**). Tzadik Acquisitions and Tzadik Management 2 identified forty-five (45) premises in the Application, but they knowingly or negligently omitted King Trail Apartments. *Id.*

6. The Tzadik Entities maintained a separate commercial general liability policy with James River, policy number 00064999-1, for the policy period of December 14, 2015 through October 15, 2016 (the "James River Policy"). Upon information and belief, the James River Policy identifies King Trail Apartments as an insured premises.

7. James River has been providing the Tzadik Entities with a defense in the Underlying Action, and has asserted that the coverage available to the Tzadik Entities is subject to an Assault and Battery Limits of Liability Endorsement. (*See* James River coverage letter dated August 15, 2018, attached hereto as **Exhibit "D"**). Pursuant to this endorsement, James

River maintains that the policy limits available for the Underlying Action are $250,000, and that these limits are eroded by the defense costs incurred to date. *Id*.

8. The Tzadik Entities also maintained an excess policy with CIIC, policy number BE 064596182, for the policy period of December 14, 2015 through October 15, 2016 (the "Excess Policy"), which provides coverage in excess of the limits of both the United Specialty Policy and the James River Policy. (*See* CIIC coverage letter dated July 6, 2018, attached hereto as **Exhibit "E"**). CIIC maintains that the coverage provided under the Excess Policy does not attach until the limits of the United Specialty Policy and the James River Policy have exhausted. *Id*.

9. There is a justiciable controversy concerning the rights and obligations of the parties under the United Specialty Policy as the Tzadik Entities contend that United Specialty has a duty to defend and indemnify them in the Underlying Action, and James River and CIIC have also taken the position that United Specialty Policy provides coverage for the Underlying Action. United Specialty avers that it has no duty to defend or indemnify the Tzadik Entities pursuant to the various terms, conditions, exclusions and endorsements of the United Specialty Policy.

10. James River, CIIC and Ms. Kimble are interested parties who have been properly included as defendants in order to bind them to the result of this action.

**PARTIES**

11. Plaintiff, United Specialty, is a Delaware corporation with its principal place of business located in Delaware. United Specialty is therefore a citizen of Delaware for purposes of subject matter jurisdiction.

12. Defendant, Tzadik Acquisitions, is a foreign limited liability company with one member, Defendant, Tzadik Management. Defendant, Tzadik Management, is a Florida limited

liability company with one member, Tzadik Consulting, LLC ("Tzadik Consulting"). Tzadik Consulting is a Florida limited liability company with one member, Adam M. Hendry, who, upon information and belief, is an individual domiciled in the State of Florida, and is a citizen of Florida. Defendants, Tzadik Acquisitions and Tzadik Management, are therefore citizens of Florida for purposes of subject matter jurisdiction.

13. Defendant, Tzadik Management 2, is a foreign limited liability company with one member: TMG 2, LLC. TMG 2, LLC is a Florida limited liability company with one member, Adam M. Hendry, who, upon information and belief, is an individual domiciled in the State of Florida, and is a citizen of Florida. Defendant, Tzadik Management 2, is therefore a citizen of Florida for purposes of subject matter jurisdiction.

14. Defendant, Tzadik Properties, is a Florida limited liability company with two members: Edward Rodriguez and Tzadik Consulting. Edward Rodriguez is, upon information and belief, an individual domiciled in the State of Florida, and is a citizen of Florida. Tzadik Consulting is a Florida limited liability company with one member, Adam M. Hendry, who is, upon information and belief, an individual domiciled in the State of Florida, and is a citizen of Florida. Defendant, Tzadik Properties, is therefore a citizen of Florida for purposes of subject matter jurisdiction.

15. Defendant, James River, is incorporated in Ohio, and has its principal place of business in Glen Allen, Virginia. Defendant, James River, is therefore a citizen of Ohio and Virginia for purposes of subject matter jurisdiction.

16. Defendant, CIIC, is incorporated in New York, and has its principal place of business is New York, New York. Defendant, CIIC, is therefore a citizen of New York for purposes of subject matter jurisdiction.

17. Defendant, Ms. Kimble, is the legal representative of the Estate of the decedent, Alfred Lance, III. Upon information and belief, Mr. Lance was an individual domiciled in the State of Florida and was a citizen of Florida. Ms. Kimble is therefore deemed to be a citizen of Florida for purposes of subject matter jurisdiction.

18. All conditions precedent to the filing of this Complaint for Declaratory Judgment have occurred, been performed, or have been waived.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and all of the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

20. This Court has personal jurisdiction over the Defendants because they are residents of, or conduct substantial business in Florida.

21. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 because this district is where the events giving rise to the Underlying Action at issue in this coverage dispute occurred, and because the Underlying Action is proceeding in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, which is situated within this district.

## BACKGROUND FACTS

22. Upon information and belief, at all times material hereto, Tzadik Acquisitions was the owner of real property located at 3770 Toledo Road, Jacksonville, Florida ("King Trail Apartments"), and King Trail Apartments was operated, maintained or managed by the Tzadik Entities.

23. On October 14, 2016, Alfred Lance, III ("Mr. Lance") was shot and killed while on the premises at King Trail Apartments (the "Incident").

24. On October 31, 2017, Ms. Kimble filed a Wrongful Death lawsuit captioned *Willa Kimble v. Tzadik Acquisitions, LLC, et. al.*, Case No. 16-2017-CA-06741 in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida (the "Underlying Action").

25. In the Underlying Action, Ms. Kimble alleges that the Tzadik Entities, as the owners and/or managers of King Trail Apartments, breached a duty to Mr. Lance by failing to provide adequate security at King Trail Apartments. (*See* Ex. A., ¶¶ 14-23).

26. The Incident occurred on October 14, 2016, the Underlying Action was filed on October 31, 2017, and defense counsel for the Tzadik Entities entered a Notice of Appearance on December 4, 2017. Notwithstanding, United Specialty did not receive notice of the Incident or the Underlying Action until approximately July 6, 2018.

27. Upon receipt of notice of the Incident and the Underlying Action, United Specialty conducted a timely investigation of the Tzadik Entities' claim for coverage respecting the Underlying Action. On October 9, 2018, United Specialty issued a Declination of Coverage.

## THE POLICY AND APPLICATION

28. On October 15, 2015, prior to the issuance of the United Specialty Policy, Tzadik Acquisitions and Tzadik Management 2 submitted an Acord Commercial Insurance Application (the "Application") to United Specialty. (*See* Ex. C).

29. Tzadik Acquisitions and Tzadik Management 2 were required to identify each and every premises they owned, rented or operated under the "PREMISES INFORMATION" and "ADDITIONAL PREMISES INFORMATION SCHEDULE" sections of the Application, and they identified forty-five (45) premises in the Application. *Id*. Tzadik Acquisitions and Tzadik Management 2 knowingly or negligently omitted King Trail Apartments from the list of premises identified in the Application. *Id*.

30. The Application forms a part of the United Specialty Policy for all purposes, and any statement or description made by or on behalf or an insured in an application for an insurance policy, or in negotiations for a policy is deemed a "representation" under Florida Statute § 627.409.

31. In reliance upon the representations provided in the Application, United Specialty issued the United Specialty Policy. The Declarations to the United Specialty Policy list each of the forty-five (45) premises identified in the Application under the schedule titled "ALL PREMISES YOU OWN, RENT OR OCCUPY" (the "Schedule of Premises"), and set forth the specific premium assessed for each listed premises under a CLASSIFICATION AND PREMIUM schedule (the "Premium Schedule"). (*See* Ex. "B" – Declarations). King Trail Apartments was not listed under the Schedule of Premises, and no premium was charged or paid for King Trail Apartments under the Premium Schedule. *Id.*

32. The United Specialty Policy specifically provides that the policy is written in reliance on the statements made in the Declarations, which are based upon the representations the Insureds made to United Specialty in the Application and otherwise:

> **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
>
> **6. Representations**
>
> By accepting this policy, you agree:
>
> a. The statements in the Declarations are accurate and complete;
> b. Those statements are based upon representations you made to us; and
> c. We have issued this policy in reliance upon your representations.

(*See* Ex. B, form CG 00 01 04 13).

33. The United Specialty Policy, subject to its terms, exclusions and other provisions, provides coverage for bodily injury claims in the Insuring Agreement for Section I, Coverage A, which states in relevant part:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

\* \* \*

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

\* \* \*

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

(*See* Ex. B, form CG 00 01 04 13).

34. The United Specialty Policy defines the term "bodily injury" in relevant part as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id*.

35. The United Specialty Policy defines the term "occurrence" in relevant part as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*.

36. The United Specialty Policy defines the term "coverage territory" in relevant part as "[t]he United States of America (including its territories and possessions), Puerto Rico and Canada[.]" *Id*.

37. Coverage under the United Specialty Policy is restricted by virtue of the Designated Locations Endorsement, which states in relevant part:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
**SCHEDULE**

**Designated Location(s):**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

- A. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I - Coverage A, and for all medical expenses caused by accidents under Section I - Coverage C, which can be attributed only to operations at a single designated "location" shown in the Schedule above:

    1. A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

    2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage C regardless of the number of:

        a. Insureds;
        b. Claims made or "suits" brought; or
        c. Persons or organizations making claims or bringing "suits".

    3. Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

    4. The limits shown In the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the

General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I - Coverage A, and for all medical expenses caused by accidents under Section I – Coverage C, which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

1. Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Location General Aggregate Limit.

C. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

D. <u>For the purposes of this endorsement, the Definitions Section is amended by the addition of the following definition:</u>

<u>"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.</u>

E. The provisions of Section III - Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

(*See* Ex. B, form GC 25 04 05 09) (emphasis supplied).

38. The United Specialty Policy contains certain procedures for reporting claims and cooperating with United Specialty, including, but not limited to, the following:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITION**
* * *
**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. <u>You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include</u>:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved Insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (3) Authorize us to obtain records and other information;

   (4) Cooperate with us In the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(*See* Ex. B, form CG 00 01 01413) (emphasis supplied).

# COUNT I – DECLARATORY JUDGMENT
## (APPLICATION, SCHEDULE OF PREMISES AND DESIGNATED LOCATIONS GENERAL AGGREGATE LIMIT ENDORSEMENT)

39. United Specialty re-alleges and re-avers Paragraphs 1 through 38 above as if fully set forth herein.

40. The United Specialty Policy does not provide coverage for the Underlying Action, or for any claims which could have been raised in the Underlying Action based upon or arising out of the October 14, 2016 shooting of Mr. Lance at King Trail Apartments, because King Trail Apartments was not identified as a premises which the insureds "own, rent or occupy" in the Application to the United Specialty Policy. (*See* Ex. B).

41. The Application required the insureds to identify each premises they owned or operated under the "PREMISES INFORMATION" and "ADDITIONAL PREMISES INFORMATION SCHEDULE" sections of the Application, and the insured identified forty-five (45) specific locations in the Application. *Id.* However, the insureds knowingly or negligently omitted King Trail Apartments from the list of premises set forth in the Application. *Id.*

42. In reliance upon the representations provided in the Application, United Specialty agreed to issue the United Specialty Policy. The Declarations to the United Specialty Policy list each of the forty-five (45) premises identified in the Application under the schedule titled "ALL PREMISES YOU OWN, RENT OR OCCUPY" (the "Schedule of Premises"). (*See* Ex. B – Declarations). It was United Specialty's practice to perform site inspections of the insureds' premises, as identified in the Application, and the inspections were one factor used to determine the premium which was assessed for each premises listed under the Schedule of Premises. Because King Trail Apartments was not identified in the Application, it was not inspected, it was not listed under the Schedule of Premises, and no premium was charged or paid for King Trail

Apartments under the CLASSIFICATION AND PREMIUM schedule (the "Premium Schedule") set forth in the Declarations. *Id.*

43. The United Specialty Policy contains a DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT endorsement (the "Designated Locations Endorsement"), which defines each premises identified in the Declarations as a designated "location," and modifies the terms and limits of coverage under the United Specialty Policy based on whether the "occurrence" at issue took place at one or more of these "locations." (*See* Ex. B, form CG 25 04 05 09). King Trail Apartments is not defined as a "location" pursuant to the Designated Locations Endorsement, because King Trail Apartments was omitted from the Application, and is therefore not listed in the Schedule of Premises found in the Declarations.

44. Because the insureds knowingly or negligently omitted King Trail Apartments from the Application: it was not inspected; it was not identified as a premises owned, rented or occupied by the insureds in the United Specialty Policy; no premium was assessed under the United Specialty Policy to insure King Trail Apartments; and King Trail Apartments was not identified as a "location" subject to the Designated Locations Endorsement of the United Specialty Policy.

45. Had King Trail Apartments been identified in the Application, United Specialty either would not have underwritten the United Specialty Policy, or it would have identified King Trail Apartments in the Schedule of Premises and, if the risk was deemed acceptable after inspection, would have assessed a premium for King Trail Apartments under the Premium Schedule.

46. Accordingly, United Specialty avers that King Trail Apartments is not a covered premises under the United Specialty Policy, and that there is no coverage for the Underlying

Action, or for any claims which could have been raised in the Underlying Action arising from the October 14, 2016 shooting of Mr. Lance at King Trail Apartments.

47. There exists a bona fide actual, present and practical need for the declaration of coverage under the United Specialty Policy and the rights and obligations of United Specialty.

48. The rights and obligations of United Specialty under the United Specialty Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the United Specialty Policy.

49. United Specialty and the Defendants have an actual, present controversy in the subject matter described herein.

50. All proper and present interests are before the Court by proper process.

**WHEREFORE**, Plaintiff, United Specialty Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that United Specialty has no obligation to defend or indemnify Tzadik Acquisitions, Tzadik Management, Tzadik Management 2 and Tzadik Properties in the Underlying Action under the United Specialty Policy; (b) declare that United Specialty has no obligation to indemnify the Defendants for any other claim that could be brought in the Underlying Action; and (c) grant such other relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT II – DECLARATORY JUDGMENT
### (FAILURE TO SATISFY CONDITIONS OF COVERAGE)

51. United Specialty re-alleges and re-avers Paragraphs 1 through 38 above as if fully set forth herein.

52. The United Specialty Policy requires, as a condition precedent to coverage, that the insured must provide notice of any "occurrence" or an offense that may result in a claim "as soon as practicable." (*See* Ex. B, form CG 00 01 04 13).

53. The United Specialty Policy also requires, as a condition precedent to coverage, that if a claim is made or "suit" is brought against any insured, the insured must provide United Specialty with written notice of the claim or "suit" as soon "as soon as practicable," and must "immediately send" copies of any demands, notices, summonses or legal papers received in connection with the claim or suit. *Id*.

54. United Specialty was not notified of the Underlying Action filed on October 31, 2017, or the October 14, 2016 shooting which gave rise to the Underlying Action, until approximately July 6, 2018. In fact, United Specialty received notice more than seven (7) months after defense counsel for the Tzadik entities entered a Notice of Appearance in the Underlying Action. Thus, the insureds did not provide United Specialty with notice of the "occurrence" giving rise to the Underlying Action or notice of the Underlying Action itself "as soon as practicable," as required by the United Specialty Policy.

55. By virtue of the late notice received from its insureds, United Specialty has been prejudiced.

56. There exists a bona fide actual, present and practical need for the declaration of coverage under the United Specialty Policy and the rights and obligations of United Specialty.

57. The rights and obligations of United Specialty under the United Specialty Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the United Specialty Policies.

58. United Specialty and Defendants have an actual, present controversy in the subject matter described herein.

59. All proper and present interests are before the Court by proper process.

**WHEREFORE**, Plaintiff, United Specialty Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that United Specialty has no obligation to defend or indemnify Tzadik Acquisitions, Tzadik Management, Tzadik Management 2 and Tzadik Properties in the Underlying Action under the United Specialty Policy; and (b) grant such other relief as the Court may deem just, proper and equitable under the circumstances.

Dated: December 11, 2018.

Respectfully submitted,

**KAPLAN ZEENA LLP**
*Attorneys for United Specialty Insurance Company*
2 South Biscayne Blvd.
One Biscayne Tower, Suite 3050
Miami, FL 33131
Tel: 305-530-0800
Fax: 305-530-0801

By: */s/ NOAH E. SNYDER*
JAMES M. KAPLAN
Florida Bar No. 921040
James.Kaplan@kaplanzeena.com
Susan.Clark@kaplanzeena.com
Service@kaplanzeena.com
NOAH E. SNYDER
Florida Bar No. 107415
Noah.Snyder@kaplanzeena.com
Maria.Escobales@kaplanzeena.com