# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

UNITED SPECIALTY
INSURANCE COMPANY,

     Plaintiff,

v.                                      Case No. 3:18-cv-1465-J-32JBT

TZADIK ACQUISITIONS, LLC,
TZADIK MANAGEMENT GROUP,
LLC, TZADIK MANAGEMENT
GROUP 2, LLC, TZADIK
PROPERTIES, LLC, JAMES
RIVER INSURANCE COMPANY,
WILLA KIMBLE, As Personal
Representative of the Estate of
Alfred Lance, III, and COMMERCE
AND INDUSTRY INSURANCE
COMPANY,

     Defendants.

_____

# **O R D E R**

In October 2015, United Specialty Insurance Company issued a CGL insurance policy (the "Policy") to apartment complex operators Tzadik Acquisitions, LLC and Tzadik Management Group 2, LLC. (Doc. 1-2). This case is about whether coverage was limited to apartment properties listed in the Policy's declarations. United claims that the Policy insured only the designated properties, while Tzadik argues the Policy covered an unlisted property, in

relation to an underlying lawsuit. Both parties filed motions for summary judgment. (Docs. 82, 85). The Court received responses in opposition (Docs. 89, 90) and held a hearing on September 8, 2020, the record of which is incorporated by reference.

## I.   BACKGROUND

### A.   Underlying Action

On October 14, 2016, Alfred Lance, III was shot and killed at Kings Trail Apartments, a complex located at 3770 Toledo Road in Jacksonville, Florida. (Doc. 1-1 ¶¶ 13–14). On behalf of Lance's estate, Willa Kimble filed a wrongful death lawsuit (the "Underlying Action") against the property owners and managers of Kings Trail, including Defendants Tzadik Acquisitions, LLC, Tzadik Properties, LLC, Tzadik Management Group, LLC, and Tzadik Management Group 2, LLC (collectively, "Tzadik").[1] (See Doc. 1-1). Kimble alleges that Tzadik failed to provide adequate security to protect Lance on the night of his death. Id. ¶¶ 9–12, 19. In this declaratory judgment action, Tzadik seeks coverage from United for the Underlying Action.[2]

---

[1] Kimble v. Tzadik Acquisitions, LLC, et al., Case No. 16-2017-CA-06741, in the Circuit Court of the Fourth Judicial Circuit in and for Duval County.

[2] At the hearing, the Court was advised that this suit has now been settled.

### B.      Insurance Application and Proposal

Tzadik first acquired an ownership interest in Kings Trail on August 2, 2014. (Doc. 85-6 at 7–8). Kings Trail is one of many apartment complexes that Tzadik owns and manages across the United States. (Doc. 85-1 at 12:16–22). Tzadik owns approximately sixty complexes in Florida, Georgia, Texas, South Dakota, and Nebraska and typically maintains insurance for each property. Id. at 13:10–25, 61:18–62:1. At the time of the fatal shooting, Tzadik held the Policy with United that is at issue here.[3]

In connection with the Policy, Tzadik submitted an application to United that identifies forty-five apartment complexes owned or operated by Tzadik in the application's "Premises Information" section. (Doc. 85-5 at 3–11). The complexes listed are located in various cities throughout Florida, but Kings Trail is not included, and neither are any complexes in Jacksonville. Id. The application cites Tzadik's "Nature of Business" as "Apartments." Id. at 3.

_____

[3] Tzadik was also insured through two other policies. First, Tzadik held a wasting limits policy from Defendant James River Insurance Company and James River is defending Tzadik in the Underlying Action, subject to a reservation of rights. (Docs. 1-4, 85-3). The James River policy explicitly lists on its schedule 3770 Toledo Road, the address of Kings Trail, as one of two premises that Tzadik owned, rented, or occupied. (Doc. 85-3 at 4). The James River policy also includes a Limitation of Coverage to Designated Premises, or designated premises endorsement (DPE), that says the policy "applies only to 'bodily injury,' 'property damage,' or 'personal and advertising injury' arising out of the ownership, maintenance or use of the premises shown in the above Schedule." Id. at 36. Second, Tzadik held an excess insurance policy with Defendant Commerce and Industry Insurance Company ("CIIC"). (Doc. 85-4).

## C.    United Insurance Policy

United provided the commercial general liability ("CGL") Policy at issue to Tzadik Acquisitions and Tzadik Management Group 2 for the policy period of October 15, 2015 through October 15, 2016.[4] (Docs. 1-2; 85-8 at 29:9–11). The Policy limits coverage to $1,000,000 per occurrence and $2,000,000 in the general aggregate. (Doc. 1-2 at 4). The Policy's "coverage territory" includes the United States, Puerto Rico, and Canada.[5] Id. at 23. The first endorsement to the Policy adds Tzadik Management Group and Tzadik Properties as named insureds and states that "[r]espective locations per Named Insured are held on file." Id. at 51.

The Policy provides liability coverage for bodily injury or property damage and defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Id. at 9, 23. In relevant part, the Policy states:

> We [United] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property

---

[4]  The policy number is DCH00047-00. (Doc. 1-2).

[5]  Coverage territory also includes international waters or airspace if injury or damage occurs in the course of travel or transportation between the United States, Puerto Rico, and Canada, as well as other parts of the world if the injury or damage arises out of goods or products made or sold by Tzadik in the United States, Puerto Rico, or Canada, activities of a person whose home is in the United States, Puerto Rico, or Canada but is away for a short time on Tzadik's business, or personal and advertising injury offenses that take place through the internet or similar electronic means. (Doc. 1-2 at 23).

> damage" <u>to which this insurance applies</u>. We will have the right and duty to defend the insured against any "suit" seeking those damages. <u>However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.</u> We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

<u>Id.</u> at 11 (emphasis added).

The Policy contains Common Policy Declarations, a Schedule of Forms, and CGL Declarations. <u>Id.</u> at 2–7. In the CGL Declarations, Tzadik's business description is "apartment building operators," followed by a section which states "ALL PREMISES YOU OWN, RENT, OR OCCUPY" and lists the same forty-five addresses provided in Tzadik's application.[6] <u>Id.</u> at 4–5. It does not list Kings Trail. The following two pages list property classifications for each of those addresses, with some addresses listed multiple times if the property comprises several classifications, such as apartment complex, swimming pool, and clubhouse. <u>Id.</u> at 6–7. In a chart, each location classification is assigned a numerical code, premium base, rate, and premium price. <u>Id.</u> The individual premium prices for each property added together amount to $260,258.00, Tzadik's "total annual premium." <u>Id.</u> at 6–7. It then states "THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY

---

[6] The addresses listed include properties in the following Florida cities: Tampa, Lakeland, Cypress Gardens, Winter Haven, Mount Dora, Sarasota, Eustis, Miami, Miami Beach, Oakland Park, and Fort Lauderdale. (Doc. 1-2 at 6–7). None of the properties listed are in Jacksonville or its surrounding areas.

5

CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY." Id. at 7. The Policy's terms "can be amended or waived only by endorsement issued by [United] and made a part of this policy." Id. at 8. Section IV provides that "[t]he statements in the Declarations are accurate and complete," that "[t]hose statements are based upon representations [Tzadik] made to [United]," and that "[United] ha[s] issued this policy in reliance upon [Tzadik's] representations." Id. at 22–23.

During the Policy period, Tzadik added and removed apartment locations from the Policy through endorsements, and premiums changed accordingly. (Doc. 1-2 at 53–56, 60, 69, 75–76, 80, 84). Kings Trail was never added. The Policy does not contain a designated premises endorsement, or DPE.[7] (Docs. 1-2, 85-8 at 28:11–15).

### D.    Relief Sought

United seeks a declaration that it has no duty to defend Tzadik in the Underlying Action because (1) Kings Trail is not one of the forty-five properties scheduled on the Policy, and (2) Tzadik failed to provide United with timely notice of the shooting, thereby prejudicing United. (Doc. 85). Conversely, Tzadik asks that the Court find (1) that United breached its contractual duty to defend

---

[7] A DPE is a type of endorsement that may be made to a CGL policy to restrict coverage to injuries and damages arising out of the ownership, maintenance, or use of specified premises. 3 Ins. Claims & Disputes § 11:22B (6th ed.).

Tzadik in the Underlying Action, and (2) that United waived the defense of late notice by failing to comply with Florida's Claims Administration Statute, and United cannot articulate prejudice resulting from the alleged late notice.[8] (Doc. 82).

## II.    DISCUSSION

This case presents a pure question of contract interpretation. "The interpretation of insurance policies, like the interpretation of all contracts, is generally a question of law." Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, 143 F. Supp. 3d 1283, 1292 (S.D. Fla. 2015) (citing Lawyers Title Ins. Corp. v. JDC (Am.) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995)). The Court must, therefore, interpret Tzadik's insurance Policy with United to determine whether the Policy covered Kings Trail.[9]

---

[8] On August 12, 2019, the Court issued an Order granting Tzadik's Motion to Stay United's Duty to Indemnify and Related Deadlines. (Doc. 62). All determinations and deadlines regarding the duty to indemnify were stayed pending resolution of the Underlying Action. Thus, the parties' motions for summary judgment pertain only to the duty to defend issue. However, if there is no duty to defend, there is no duty to indemnify.

[9] At oral argument, counsel for Tzadik admitted that the parol evidence in this case disfavors Tzadik's position, but both parties agree that the Court will not consider parol evidence and will limit its consideration to the Policy. See, e.g., Lawyers Title Ins. Corp., 52 F.3d at 1580 ("Questions of fact arise only when an ambiguous contract term forces the court to turn to extrinsic evidence of the parties' intent, such as precontract negotiations, to interpret the disputed term.").

7

Florida law governs the interpretation of the Policy.[10] (Docs. 82 at 6 n.4, 85). The "Florida Supreme Court has made clear that the language of the policy is the most important factor. Under Florida law, insurance contracts are construed according to their plain meaning." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274–75 (11th Cir. 2008) (citation omitted) (quoting Taurus Holdings, Inc. v. United States Fid. & Guar. Co., 913 So. 2d 528, 537 (Fla. 2005)). When a policy's language is plain and unambiguous, "a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as written." Travelers Indem. Co. v. PCR Inc., 889 So. 2d 779, 785 (Fla. 2004); see also State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004) ("In insurance coverage cases under Florida law, courts look at the insurance policy as a whole and give every provision its full meaning and operative effect.") (quotation omitted).

However, "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous, and must be

---

[10] When federal jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332(2) and when an insurance policy is issued for delivery in Florida, both of which are the case here, the Court applies the substantive law of Florida. See, e.g., Key Custom Homes, Inc. v. Mid-Continent Cas. Co., 450 F. Supp. 2d 1311, 1316 (M.D. Fla. 2006) ("Because the jurisdiction of the Court is based on diversity of citizenship, and since the CGL Policy was issued in Florida, the Court must look to the substantive law of Florida for guidance in interpreting the Policy.").

interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." <u>Steinberg</u>, 393 F.3d at 1230 (quotations omitted). "While the insured has the burden of proving that a claim against it is covered by the insurance policy, the insurer has the burden of proving an exclusion to coverage." <u>Doe v. North River Ins. Co.</u>, 719 F. Supp. 2d 1352, 1357 (M.D. Fla. 2010) (citing <u>LeFarge Corp. v. Travelers Indem. Co.</u>, 118 F.3d 1511, 1516 (11th Cir. 1997)).

Whether a duty to defend exists is a question of law that "depends solely on the allegations in the complaint filed against the insured." <u>Trizec Properties, Inc. v. Biltmore Const. Co.</u>, 767 F.2d 810, 811 (11th Cir. 1985) (applying Florida law). "[I]f the allegations of the complaint alleging a claim against the insured are acts not covered by the policy, or are excluded from the policy's coverage, the insurer is not obligated to defend or indemnify the insured." <u>Certain Interested Underwriters at Lloyd's London Subscribing to Certificate of Ins. No. 9214 v. Halikoytakis</u>, No. 8:09-CV-1081-T-17TGW, 2011 WL 1296816, at *2 (M.D. Fla. Mar. 31, 2011), <u>aff'd</u>, 444. F. App'x 328 (11th Cir. 2011) (quotation omitted); <u>see also</u> <u>id.</u> at *1 ("If an insurer does not have a duty to defend, then it does not have a duty to indemnify," as "[t]he duty to defend ceases when it is shown that there is no potential for coverage, i.e. when there is no duty to indemnify.").

Tzadik's application, which the parties agree is incorporated into the Policy,[11] lists the forty-five Tzadik properties for which it seeks coverage. (Doc. 85-5). Kings Trail is not listed. The Policy itself, issued by United to Tzadik, is an eighty-four-page document that begins with Common Policy Declarations, a Schedule of Forms, and CGL Declarations. (Doc. 1-2). "THESE DECLARATIONS . . . COMPLETE THE . . . POLICY." Id. at 7. On the first page of the Policy, Tzadik's business description is "apartment building operators." Id. at 2. The CGL Declarations list the addresses of the same forty-five properties as in Tzadik's application under the title "ALL PREMISES YOU OWN, RENT, OR OCCUPY," and assign a corresponding premium(s) for each address. Id. at 4–7. Those premiums total $260,258.00, the annual price for Tzadik to maintain the insurance Policy with United. Id. at 2, 7. Like in the application, Kings Trail is not listed.

Tzadik provides no explanation for the list of addresses in the Policy (apart from arguing that the list needed not be exhaustive) and seems to suggest the list has no meaning. This cannot be the case. The CGL Declarations are explicitly part of the Policy; the Court must give "full meaning and operative effect" to all provisions of the Policy, including the declarations. Steinberg, 393

---

[11] See, e.g., Mathews v. Ranger Ins. Co., 281 So. 2d 345, 348 (Fla. 1973) ("The application thus becomes a part of the agreement between the parties and the policy together with the application form the contract of insurance.").

F.3d at 1230. Tzadik operates apartment complexes, and the list of complexes provides the very basis for the Policy's annual premium. Tzadik added and subtracted apartment complexes it acquired or sold during the policy period and United adjusted the premium accordingly. (Doc. 1-2 at 53–56, 60, 69, 75–76, 80, 84). If the schedule of premises were meant to provide only an idea of Tzadik's business, as opposed to an operative list of the properties and business insured under the Policy, these amendments would have been superfluous.

Tzadik is correct that the Policy is not a premises liability policy that insures only certain premises; it is a CGL Policy that insures businesses against third-party liability. See, e.g., Evanston Ins. Co. v. Gaddis Corp., 145 F. Supp. 3d 1140, 1149 (S.D. Fla. 2015) ("The primary purpose of a [CGL] policy . . . is to protect businesses from third-party liability incurred as a result of that company's business operations.") (quotation omitted). It is also true that the "coverage territory" under the Policy is the United States, Canada, and Puerto Rico, and that the Policy does not contain a DPE. Also, any ambiguity in the Policy must be construed in in favor of Tzadik and against United, as the Policy's drafter. See, e.g., Steinberg, 393 F.3d at 1230. However, none of these things mean United is bound to provide coverage for an apartment complex not listed in the Declarations. The cases Tzadik relies upon to argue for coverage are distinguishable.

In Am. Empire Surplus Lines Ins. Co. v. Chabad House of N. Dade, Inc., 771 F. Supp. 2d 1336, 1343 (S.D. Fla. 2011), aff'd 450 F. App'x 792 (11th Cir. 2011), the court held that allegations of abuse were excluded from the policy's coverage, and that the policy's DPE was ambiguous and did not bar coverage for acts that occurred away from the defendant volunteer organization's office. There, the nature of the defendant's business—sending volunteers out to help children with disabilities—was fundamentally different than Tzadik's business as an apartment complex operator, and there is no indication that the policy structure was based on scheduled locations.[12] In Szczeklik v. Markel Int'l Ins. Co., 942 F. Supp. 2d 1254 (M.D. Fla. 2013), aff'd, 546 F. App'x 926 (11th Cir. 2013), the court found that a DPE in a distributor's policy was ambiguous and therefore did not preclude coverage for underlying personal injury claims when an auto shop employee was injured by the distributor's product that had been taken to the auto shop in the ordinary course of the distributor's business. Again, this case involved a different type of insured business and an ambiguous DPE. Here, there was no DPE. Thus, unlike Szczeklik, United is not trying to rely on a DPE exclusion to deny coverage. Cf. id. at 1260–63.

The final case that Tzadik cites, and upon which it relied heavily at the hearing, Gaddis, 145 F. Supp. 3d, is more similar but still distinct from this

---

[12] The discussion in Chabad House upon which Tzadik relies is also dicta.

case. The Gaddis CGL policy contained a "Schedule of Locations" with seventy-one specific addresses to which the insurance applied. Id. at 1144. A critical difference, however, is that the insured in Gaddis was a taxi company, and the underlying suit involved a customer who was "viciously assaulted" by a driver during a cab ride. Id. The unoccupied parking lot where the assault took place was not on the insurance policy's Schedule of Locations. Id. Though the policy contained a DPE, the court found that the policy was "rife with conflicting pronouncements, which create sufficient ambiguity to construe the Policy in favor of coverage." Id. at 1149. Here, the business insured is fundamentally different, the Declarations limiting coverage to the listed apartment premises are clear, and there is no ambiguous DPE (the Policy has none).

This case is far more akin to Nugget Oil, Inc. v. Universal Sec. Ins. Co., 584 So. 2d 1068 (Fla. 1st DCA 1991). There, plaintiff Nugget Oil faced a liquor liability lawsuit pertaining to one of its fifty convenience store locations in Alabama and Florida. Id. at 1069. Nugget Oil argued that its insurance policy covered its Alabama stores, despite having crossed out its Alabama store locations on the application's list of the "names and addresses of all locations." Id. The Florida appellate court squarely rejected Nugget Oil's argument. Id. at 1072. The court found that the insurance policy and application, read together, limited coverage to Nugget Oil's Florida stores. Id. at 1069–70. In so holding, the court stated: "[I]n determining which Nugget stores were insured against

liquor liability claims, we cannot ignore the identification of the insured locations found in the application." Id. at 1070. Similarly, the Court cannot ignore the identification of the forty-five insured locations here, found not only in Tzadik's application, but also in the Declarations to its Policy. The court in Nugget Oil acknowledged the "maxim of insurance law which provides that insurance contracts must be liberally construed against the insurer," but emphasized that the rule applies only when "a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction." Id. at 1070–71. There was no such inconsistency in Nugget Oil, and there is none here.[13]

Tzadik asserts that a DPE may have limited the Policy to the properties listed in the CGL Declarations, but without a DPE, the Policy covers all of Tzadik's business locations whether they were listed in the Declarations or not. This DPE argument is a red herring. A CGL policy may well cover an occurrence outside the premises listed (so long as it occurs within the "coverage territory"), when the occurrence arises from the scheduled premises. But the lack of a DPE does not expand the Policy's coverage beyond what is clearly demarked in the Policy's Declarations.[14]

---

[13] The Court acknowledges that the policy in Nugget Oil was a liquor liability policy, not a CGL policy, but the reasoning of Nugget Oil is persuasive here.

[14] As conceded by Tzadik's counsel at the hearing, Tzadik's argument,

To the extent that the <u>Gaddis</u> court requires coverage limitations to specific locations to be "clear and unequivocal," <u>Gaddis</u>, 145 F. Supp. 3d at 1149, the Court finds this standard to have been met. Despite the creative efforts of Tzadik, the coverage question is straightforward, and the Policy is not ambiguous. Tzadik applied for CGL coverage for forty-five of its apartment complexes. United issued the Policy for those forty-five properties, listing them in the Declarations under the heading "ALL PREMISES YOU OWN, RENT, OR OCCUPY." The premium paid was an aggregation of the individual premiums for each of the forty-five properties. Kings Trail was not one of those properties. The assault occurred at Kings Trail. The Court cannot rewrite the Policy to include coverage for Kings Trail. <u>Szczeklik</u>, 942 F. Supp. 2d at 1260 ("[A] court cannot rewrite an insurance contract to extend coverage beyond what is clearly set forth in the contractual language.") (quoting <u>Florida Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron</u>, 721 So. 2d 825, 826 (Fla. 3d DCA 1998)). Accordingly, United is entitled to a declaratory judgment that it has no duty to defend Tzadik in the Underlying Action.

### III.   CONCLUSION

Accordingly, it is hereby

---

taken to its logical conclusion, would mean that even if the Policy had listed only <u>one</u> of Tzadik's apartment properties in the Declarations, the Policy still would have insured <u>all</u> of Tzadik's properties, simply because the Policy is a CGL Policy. The Court is unpersuaded.

**ORDERED:**

1.    Plaintiff United Specialty Insurance Company's Amended Motion for Summary Judgment (Doc. 85) is **GRANTED**.

2.    Defendants Tzadik Acquisitions, LLC, Tzadik Management Group, LLC, Tzadik Management Group 2, LLC, and Tzadik Properties, LLC's Motion for Summary Judgment (Doc. 82) is **DENIED**.

3.    As to Count I of the Complaint for Declaratory Judgment (Doc. 1), United has no duty to defend or indemnify Tzadik under Policy No. DCH00047-00 in the Underlying Action. Declaratory Judgment to that effect will be entered in favor of Plaintiff United Specialty Insurance Company against Defendants Tzadik Acquisitions, LLC, Tzadik Management Group, LLC, Tzadik Management Group 2, LLC, and Tzadik Properties, LLC.

4.    Having found that the Policy did not cover Kings Trail, and that United therefore has no duty to defend Tzadik in the Underlying Action, the Court need not proceed to the notice issue. Thus, the Court finds Count II of the Complaint to be moot.

5.    Judgment will also be entered on Count I of the counterclaim (Doc. 30) in favor of Plaintiff United Specialty Insurance Company and against Defendants Tzadik Acquisitions, LLC, Tzadik Management Group, LLC, Tzadik Management Group 2, LLC, and Tzadik Properties, LLC.

6.     Though Tzadik's bad faith counterclaim, Count II, was previously abated (Doc. 51), in light of the Court's ruling, the bad faith counterclaim is now **DISMISSED**.

7.     The Court assumes this Order resolves all pending matters and directs the Clerk to close the file now. However, because there are additional Defendants who are not parties to the motions decided herein, if any of those Defendants have other matters for the Court to resolve, they should file appropriate documents no later than **September 28, 2020**.

**DONE AND ORDERED** in Jacksonville, Florida the 14th day of September, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

tnm
Copies:

Counsel of record